```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT BLUEFIELD
```

KIMBERLY HOWELL,

      Plaintiff,

v.                        CIVIL ACTION NO. 1:07-0112

BLUEFIELD REGIONAL MEDICAL
CENTER, INC.,

      Defendant.

## **MEMORANDUM OPINION**

Pending before the court is the motion for summary judgment (doc. # 32) filed by defendant.  Plaintiff filed both a memorandum in opposition to that motion (doc. # 37) and an "answer"[1] (doc. # 36).  For reasons expressed more fully below, defendant's motion is GRANTED.

## **Background**

The origin of this case is defendant Bluefield Regional Medical Center's (BRMC) decision to terminate the employment of plaintiff Kimberly Howell (Howell).  Howell was employed by BRMC from roughly October 1996 until she was discharged on July 19,

---

[1] Although not contemplated by the Federal Rules of Civil Procedure or the local rules of this court, the court has considered plaintiff's answer to the motion for summary judgment and the exhibits thereto in making its ruling herein.  In doing so, the court has construed the answer as part of plaintiff's memorandum in opposition to defendant's motion for summary judgment.

2005.[2]  At the time plaintiff's employment was terminated, she served as the Director of the OB/GYN unit, a management position.

On July 12, 2005, BRMC held a meeting with its Nursing Directors, including plaintiff, regarding the hospital's new policy regarding vacation for Directors.  Plaintiff had requested to take Friday, July 15, 2005, off as a vacation day.  However, pursuant to the new vacation policy, her vacation request was denied.

On the morning of July 15, 2005, plaintiff failed to show up for work.  Around the middle of the day, Howell reported to work.  Howell has stated that she was late for work because she had an appointment[3] that morning but that she had arranged for appropriate coverage.  According to plaintiff, Nursing Directors were allowed to take appointments throughout the workday without using vacation or sick leave as long as the appropriate people were notified.  Howell contends that she did so for her absence on July 15.

On the morning of July 18, 2005, Sandee Cheynet, BRMC's Vice President of Administrative Services, made the decision to terminate Howell's employment.[4]  According to Cheynet, the

---

[2] Howell resigned from BRMC on August 17, 1990, but was later rehired on July 22, 1991.

[3] Howell cannot remember the nature of the appointment.

[4] Also involved in the decision to terminate Howell was Rhonda Duncan, BRMC's Interim Vice President for Nursing.

2

termination was a result of the events of July 15, 2005, as well as other prior incidents. Howell was informed of her termination at approximately 6:00 p.m. the next day. Earlier that day, plaintiff had informed BRMC that she would be taking time off under the Family and Medical Leave Act (FMLA).

According to plaintiff, BRMC discharged her in retaliation for exercising her rights under the FMLA and discriminated against her on the basis of disability, in violation of the West Virginia Human Rights Act (WVHRA). As to the FMLA claim, BRMC contends that plaintiff cannot even make out a prima facie case of retaliation because the decision to terminate her employment was made prior to the exercise of her rights under the FMLA. BRMC also argues that the disability discrimination claim must fail because plaintiff has failed to show that she was disabled within the meaning of the WVHRA.

## **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that

the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial.  Id. at 322.  If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.

## **Analysis**

*FMLA*

Under the FMLA, eligible employees are entitled to take up to twelve weeks of unpaid leave in a twelve-month period for specified family or health-related reasons.  29 U.S.C. §

4

2612(a)(1).  The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny" an employee's exercise of these rights or to "discharge or in any other manner discriminate against" an employee who exercises his or her FMLA rights.  29 U.S.C. § 2615(a)(1) and (2); see also Culbertson v. Wellmont Health Sys., 2007 WL 2811361 (W.D. Va. 2007).

FMLA retaliation claims are analyzed under the McDonnell Douglas[5] framework that applies to cases brought pursuant to Title VII of the Civil Rights Act of 1964.  See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006).  Therefore, in order to succeed on her retaliation claim, Howell must first make a prima facie showing that 1) she engaged in protected activity; 2) BRMC took adverse action against her; and 3) the adverse action was causally connected to her protected activity.  See id. at 551; see also Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998).  If Howell can make out a prima facie case of FMLA retaliation and BRMC offers a nondiscriminatory reason for her dismissal, the burden will be on Howell to establish that BRMC's proffered explanation is pretext for FMLA retaliation.  See id.; see also Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973).

5

Howell can establish the first two elements of a prima facie case because it is undisputed that she engaged in a protected activity when she took FMLA leave and that BRMC took adverse action against her when it terminated her employment. What Howell cannot do, however, is show that there was a causal connection between the taking of FMLA leave and her termination. In her affidavit offered in support of BRMC's motion for summary judgment, Sandee Cheynet stated that the decision to terminate Howell's employment was made the morning of July 18, 2005, prior to Howell's exercise of her rights under the FMLA. Cheynet Aff. ¶ 16. Cheynet further stated that at the time she made the termination decision she was unaware that plaintiff was taking FMLA leave or intended to do so. Id. at ¶ 17.[6]

Howell's affidavit states that she provided an excuse from her doctor to BRMC shortly before lunch on July 19, 2005. Howell Aff. ¶ 19. When she did so, Howell advised BRMC that she was applying for FMLA. See id. The FMLA certification completed by Dr. Brodnik is dated July 19, 2005, and was received by BRMC on July 26, 2005. See Exh. K to BRMC's Motion for Summary Judgment. Howell also contends that BRMC was aware that she

---

[6] According to Cheynet, the first time BRMC became aware of Howell's FMLA request was on the afternoon of July 19, 2005, when she picked up FMLA forms from Human Resources. Cheynet Aff. ¶ 21.

intended to take FMLA leave at 1:52 a.m., on July 19, 2005.[7] Howell argues a causal connection exists because she was not actually informed of her termination until the evening of July 19, 2005, after she engaged in protected activity earlier that day. However, the timing of the decision itself, not notification, is what is important for establishing a causal connection. See, e.g., Clark County School District v. Breeden, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned [employment actions] upon discovering a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Obviously there can be no causal connection when the termination decision was made prior to the exercise of protected rights. See, e.g., Reynolds v. Extendicare Health Servs., Inc., 257 Fed. Appx. 914, 921 (6th Cir. 2007) (no causal connection in Title VII retaliation case because even though adverse action occurred after protected activity, the decision was made prior to protected activity);

---

[7] In support of this contention, Howell points to an email from Brian Scott to Schvonne Lyle and Cathy Nelson in which Scott writes: "Kim Howell called in again for today. Said she will be "off awhile" per Dr. Brodnik." Howell Aff. ¶ 19 and Exh. G thereto. While the court believes this email falls short of demonstrating that BRMC was aware that plaintiff was exercising her rights under the FMLA, it does not affect the court's decision herein because the email and the events detailed therein still occurred after the termination decision had already been made.

Meadows v. Ford Motor Co., 21 Fed. Appx. 302, 304 (6th Cir. 2001) (no causal connection in age discrimination case where filing of EEOC charge occurred after adverse employment action); Moore v. Hillsborough County Board of County Commissioners, 544 F. Supp. 2d 1291, 1306-07 (M.D. Fla. 2008)(when employer makes tentative decision to begin termination proceedings before protected activity occurs, fact that employer proceeds with such decision is not evidence of causation that will support retaliation claim); Robinson v. American Stock Exchange LLC, 2007 WL 3084970, *7 (S.D.N.Y. 2007) (no causal connection in retaliation case where alleged retaliation occurred prior to protected activity).

 There is no evidence in the record that contradicts Cheynet's sworn testimony regarding the timing of the termination decision. Faced with this obstacle, plaintiff counters that because there is no evidence corroborating Cheynet's account of when the decision was made that somehow this creates an issue of fact for the jury. Plaintiff is mistaken; there is no jury question unless plaintiff offers evidence, not speculation, countering Cheynet's testimony. This she has failed to do and, therefore, she cannot establish a prima facie case of FMLA retaliation. Accordingly, BRMC is entitled to the entry of summary judgment in its favor on plaintiff's FMLA claim.

*Disability Discrimination*

In Hosaflook v. Consolidation Coal Co., 201 W. Va. 325, 326 (1997), West Virginia's highest court discussed the requirements for establishing a prima facie case of disability discrimination under the West Virginia Human Rights Act, W. Va. Code 5-11-1 et seq.:

> In order to establish a case of discriminatory discharge under W. Va. Code, 5-11-9 [1989], with regard to employment because of a handicap[8], the complainant must prove as a prima facie case that (1) he or she meets the definition of "handicapped," (2) he or she is a "qualified handicapped person," and (3) he or she was discharged from his or her job." Syl. pt. 2, in relevant part, Morris Memorial Convalescent Nursing Home, Inc. v. Human Rights Commission, 189 W. Va. 314, 431 S.E.2d 353 (1993).

Id. As the Supreme Court of Appeals of West Virginia explained, under the WVHRA, "a person with a disability" means:

> [A] person who has one or more physical or mental impairments that substantially limits one or more major life activities; a person who has one or more physical or mental impairments that does not substantially limit one or more major life activities, but that is treated by others as being such a limitation; a person who has one or more physical or mental impairments that substantially limits major life activities only as a result of the attitudes of others toward such impairment; and a person who has no such impairments, but who is treated by others as having such impairments.

---

[8] Although Hosaflook uses the word "handicap" and the WVHRA uses the word "disability," courts have indicated the two terms are interchangeable. Stone v. St. Joseph's Hosp. of Parkersburg, 208 W. Va. 91, 100 n. 12 (2000); see also Miller v. Terramite Corp., 114 Fed. Appx. 536, 543 n* (4th Cir. 2004).

Stone v. St. Joseph's Hosp. of Parkersburg, 208 W. Va. 91, 102 (2000).  Under the West Virginia regulations, "substantially limits" means "the inability to perform a major life activity that the average person in the general population can perform"; OR "a significant restriction as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same activity."  77 C.S.R. § 2.5; Hoops v. Elk Run Coal Co., Inc., 95 F. Supp.2d 612, 617 (S.D.W. Va. 2000).  Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.  W. Va. Code § 5-11-3(m).

Howell has put forward no evidence that her medical condition affected a major life function.  In her deposition, Howell testified that her alleged disability did not prevent her from working:

> Q: Were you physically able to work the morning of July 15th?
>
> A: Yes, sir.
>
> Q: All right.  Were you mentally able to work the morning of July 15th?
>
> A: Yes, sir.

> Q: All right. So nothing from a physical or mental standpoint prevented you from working on the morning of July 15th?
>
> A: Well, I mean, I guess the answer to that question is "no."

Howell Dep. at 103-04. Howell also testified that when she was on vacation days after her termination that she was not precluded from doing anything she wanted:

> Q: When you were in Hawaii was there anything you wanted to do but you could not do because of your anxiety and depression?
>
> A: The answer to your question is "no."

Howell Dep. at 198.

The only "evidence" that plaintiff offers to counter her own admissions that she was not disabled within the meaning of the WVHRA is the FMLA certification form completed by Dr. Brodnik. This form, however, falls short of establishing that plaintiff was disabled. First, nowhere on the form does it indicate that plaintiff was disabled. Rather, the form suggests that plaintiff was not disabled because she had a temporary condition which did not render her unable to perform work of any kind. See Exh. K to BRMC's Motion for Summary Judgment. Second, the FMLA certification uses the term "serious health condition,"

11

not disability.  See id.  The two terms do not have the same meaning and are not interchangeable.

Because plaintiff has failed to produce evidence that she is substantially limited in any major life activity, the initial requirement to pursue a claim under the West Virginia Human Rights Act, her disability discrimination claim must fail. Accordingly, defendant's motion for summary judgment as to this claim is GRANTED.

### Conclusion

Based on the foregoing, defendant's motion for summary judgment is GRANTED.  Accordingly, a separate Judgment Order of even date herewith will be entered.

The Clerk is directed to mail copies of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 23rd day of June, 2008.

ENTER:

David A. Faber
United States District Judge